IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ESTATE OF BRANDON ALEX, through personal representative Detreasure Coker, and DETREASURE COKER, individually and as surviving mother of Brandon Alex, deceased, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:17-cv-2622-M |
| T-MOBILE US, INC., f/k/a MetroPCS Communications, Inc.; T-MOBILE USA, INC.; T-SYSTEMS NORTH AMERICA, INC.; and DEUTSCHE TELEKOM NORTH AMERICA, INC., | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss, (ECF No. 13), and Motion for Leave to File Second Amended Complaint, (ECF No. 30). For the reasons stated below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and the Motion for Leave is **GRANTED**.

I. **Factual and Procedural Background**

On March 11, 2017, Brandon Alex was injured when he "fell from a daybed." (Am. Compl. ¶ 12, ECF No. 10). His babysitter found him "breathing too faintly." (*Id.*) The babysitter repeatedly dialed 9-1-1 from her cellphone, but was placed on hold each time. (*Id.* ¶ 13). Collectively, the babysitter was placed on hold for more than forty minutes. (*Id.*) Unable to connect to the 9-1-1 dispatcher, the babysitter contacted Brandon Alex's grandmother, Bridget

1

Alex, who later drove him to an emergency room. (*Id.* ¶¶ 13-14). Unfortunately, Brandon Alex was pronounced dead soon after arriving at the hospital. (*Id.* ¶ 14).

Plaintiffs instituted this action in the 95th Judicial District Court of Dallas County, Texas, for claims arising from Brandon Alex's death. Their claims include negligence, gross negligence, products liability, violation of the Texas Civil Wiretap Act, ("CWA"), and violation of the Texas Deceptive Trade Practices Act ("DTPA"). (*Id.* ¶¶ 38-45, 51-64). Detreasure Coker, alleged to be Brandon Alex's biological mother, also alleges wrongful death and survival claims. (*Id.* ¶¶ 66-72). Defendants removed the case to this Court, but the case has been stayed pending the Court's resolution of Defendants' Motion to Dismiss. (ECF No. 22).

## II. Motion to Dismiss

### a. Legal Standard

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Twombly,* 550 U.S. at 570. The court must accept all of the plaintiff's factual allegations as true, but it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id.* at 555. Where the factual allegations do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.

### b. Analysis

#### i. Statutory Immunity

Under Texas law, wireless service providers and manufacturers have some statutory immunity from claims arising out of their provision of 9-1-1 services under Section 771.053(a) of the Texas Health and Safety Code,[1] which states:

> A service provider of communications service involved in providing 9-1-1 service, a manufacturer of equipment used in providing 9-1-1 service, [or] a developer of software used in providing 9-1-1 service . . . is not liable for any claim, damage, or loss arising from the provision of 9-1-1 service unless the act or omission proximately causing the claim, damage, or loss constitutes gross negligence, recklessness, or intentional misconduct.

Accordingly, to qualify for statutory immunity, a defendant must be one of the covered entities involved in providing 9-1-1 services, and the claims against it must arise from the provision of 9-1-1 services.

Defendants meet both conditions. Plaintiffs allege that Defendants operate 9-1-1 communications services, (*id.* ¶¶ 17-18), create software used in providing 9-1-1 services, (*id.* ¶¶ 57-58), or provide 9-1-1 capable cellphones, (*id.* ¶ 12-13), and that their claims arise from the provision of 9-1-1 services. (*See id.* ¶ 59 ("The harm to Plaintiffs resulted directly from the software modifications that prevented Brandon's babysitter from reaching 9-1-1 in time to save his life."); *id.* ¶¶ 21-22, 38-45).[2]

---

[1] Plaintiffs argue that the Court should instead evaluate immunity under Section 772.407 of the Texas Health and Safety Code. (Pl. Resp. at 17, ECF No. 21). Section 772.407 and Section 771.053(a) are not mutually exclusive. The former covers entities involved in providing 9-1-1 services in a county whereas the latter more broadly covers such entities in the state. *Compare* § 772.047 (applying to counties with population over two million) *with* § 772.053(a) (setting forth "[s]tatewide [l]imitation" on liability). Moreover, the language of Section 772.407 is "nearly identical to the language of section 771.053(a)." *See Cook v. City of Dallas*, 683 F. App'x 315, 319 n.3 (5th Cir. 2017). Defendants argue that they are immune under Section 771.053(a), and the Court evaluates Plaintiffs' claims under that section. *See also id.* at 319 (evaluating T-Mobile's statutory immunity under Section 771.053(a) for claims related to a 9-1-1 call in Dallas).

[2] *See also* TEX. HEALTH & SAFETY CODE § 771.001 ("9-1-1 service means a communications service that connects users to a public safety answering point through a 9-1-1 system."). Plaintiffs' claims arise from the babysitter's inability to connect with the 9-1-1 operator.

However, the statutory immunity provided by Section 771.053(a) is not absolute. To overcome Defendants' claim of immunity, Plaintiffs must plausibly allege that Defendants proximately caused Brandon Alex's death and that Defendants' acts or omissions constituted gross negligence, recklessness, or intentional misconduct. *Cook*, 683 F. App'x at 319 (citing TEX. HEALTH & SAFETY CODE § 771.053(a)). Because Plaintiffs have plausibly alleged proximate cause and gross negligence, for the reasons discussed below, the Court declines to dismiss their claims on immunity grounds.

### 1. Proximate Cause

The components of proximate cause are cause-in-fact and foreseeability. *See Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 929 (Tex. 2015) (citation omitted). A tortious act or omission is a cause-in-fact if it serves as "a substantial factor in causing the injury and without which the injury would not have occurred." *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 774 (Tex. 2010). An injury is foreseeable "if, in light of all the circumstances, a reasonably prudent man would have anticipated that the injury would be a consequence of the act or omission in question." *Hall v. Atchison, T. & S. F. Ry. Co.*, 504 F.2d 380, 385 (5th Cir. 1974). Proximate cause cannot be established by "mere conjecture, guess, or speculation." *HMC Hotel Props. II Ltd. P'ship v. Keystone-Texas Prop. Holding Corp.*, 439 S.W.3d 910, 913 (Tex. 2014).

The case of *City of Dallas v. Sanchez* is instructive on what constitutes proximate cause in a circumstance similar to the one presented here. 494 S.W.3d 722 (Tex. 2016). In *Sanchez*, 9-1-1 dispatchers received two calls within ten minutes of each other. *Id.* at 725. Both calls—from two different callers—originated from the same apartment complex, and both requested assistance with a drug overdose victim. *Id.* After the dispatcher informed the person calling on behalf of Matthew Sanchez that emergency responders were on route, the call was disconnected.

4

*Id.* Once responders arrived at the apartment complex, "they erroneously concluded that the two 9-1-1 calls were redundant and that a single individual was the subject of both calls." *Id.* Responders ultimately never went to the apartment of Sanchez, who died six hours later. *Id.* Sanchez's parents sued the City of Dallas, alleging that the 9-1-1 call was disconnected as a result of a defect in the City's phone system. *Id.* They alleged that their son would have received life-saving medical care but for this defect, which prevented responders from having sufficient information to correctly differentiate the two calls. *Id.*

The key issue before the Texas Supreme Court was whether the plaintiffs had sufficiently alleged, to survive a motion to dismiss, that a defective 9-1-1 system proximately caused Sanchez's death.[3] *Sanchez*, 494 S.W.3d at 726. The court held that due to intervening factors, Plaintiffs could not establish proximate cause. *See id.* at 728 (The death was caused by "drugs, the passage of time, and misinterpretation of information [by the emergency responders]," and the alleged malfunction was merely one of a "series of factors that contributed to Sanchez not receiving timely medical assistance."); *id.* at 727-28 ("Between the alleged malfunction and Sanchez's death, emergency responders erroneously concluded separate 9-1-1 calls were redundant and left the apartment complex without checking the specific apartment unit the dispatcher had provided to them."). Accordingly, the court held that immunity applied.[4]

---

[3] This issue came up in the following way. The City argued that governmental immunity protected it from liability. *Sanchez*, 494 S.W.3d at 725. The plaintiffs argued that immunity was waived under the Texas Tort Claims Act ("TTCA"), TEX. CIV. PRAC. & REM. CODE § 101.021. For immunity to be waived under the TTCA, "personal injury or death must be *proximately caused* by a condition or use of tangible personal or real property." *Dallas Cty. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 342–43 (Tex. 1998) (emphasis added). The City argued that immunity applied because Sanchez's death was caused by a drug overdose, not the 9-1-1 system. *Sanchez*, 494 S.W.3d at 725. Thus, although it was not addressing Section 771.053(a), *Sanchez* was addressing proximate cause in a similar factual context.

[4] The Texas Supreme Court also noted that "the use of property that simply hinders or delays treatment does not 'actually cause[] the injury' and does not constitute a proximate cause of an injury." *Sanchez*, 494 S.W.3d at 727. The statement is dictum because the court's actual analysis does not rely on this statement. As discussed, the court found, as a matter of law, that the alleged defect was too attenuated from Sanchez's death to constitute proximate cause.

The Fifth Circuit, in an unpublished opinion in another case, reached a similar conclusion. In *Cook*, the victim, Deanna Cook, called 9-1-1 from her cellphone while an intruder was attacking her inside her home. 683 F. App'x at 317. Location-tracking technology sent Cook's location to the 9-1-1 dispatcher "within several minutes" of the call. *Id.* "Nearly fifty minutes after Cook placed her 9-1-1 call, police officers arrived at Cook's home." *Id.* However, the officers only inspected the outside of Cook's home and "left without entering the residence." *Id.* Cook's family found her body in the home two days later. *Id.* Members of Cook's family filed suit against T-Mobile, alleging that it failed to implement proper location-tracking that would have allowed 9-1-1 operators to locate Cook "quicker than the several minutes it actually took." *Id.* at 320. Had location information been instantly transmitted, plaintiffs argued, Cook's life would have been spared. *Id.*

In dismissing the case for failure to state a claim, another judge on this Court held that T-Mobile was immune under Section 771.053(a) because, among other reasons, any alleged defect in 9-1-1 technology was not a proximate cause of Cook's death. *Cook v. T-Mobile USA, Inc.*, 2015 WL 11120974, at *1 (N.D. Tex. Sept. 22, 2015) (Solis, J.). The Fifth Circuit affirmed in an unpublished opinion, specifically highlighting the intervening factors that made the alleged defect too attenuated from Cook's death to constitute proximate cause. *See Cook*, 683 F. App'x at 321 ("Plaintiffs alleged that even after emergency personnel arrived at Cook's residence, Cook's call was not treated as serious[, and] [t]hey have failed to allege that the emergency personnel would have reacted differently had they received Cook's location sooner.").

---

Indeed, it is hard to believe that the Texas Supreme Court would hold that delays caused by defects in 9-1-1 technologies are, as a matter of law, never actionable due to the absence of proximate cause. *C.f. Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008) (considering proximate cause in context of whether an alleged omission delayed proper treatment); *Bustamante v. Ponte*, 529 S.W.3d 447, 456 (Tex. 2017) (same). The Court therefore rejects Defendants' argument that, as a matter of law, Plaintiffs cannot establish proximate cause because the alleged defects here simply hindered or delayed treatment.

In *Kelley v. City of Dallas*, this Court again addressed the issue of whether T-Mobile's failure to provide prompt location information from 9-1-1 calls was the proximate cause of a victim's death. 2017 WL 3891680, at *1 (N.D. Tex. Aug. 17, 2017) (Toliver, M.J.), *report and recommendation adopted*, 2017 WL 3868257 (N.D. Tex. Sept. 5, 2017) (Boyle, J.). The victim, D'Lisa Kelley, called her sister, screaming, but the call disconnected. *Id.* Kelley's grandmother called 9-1-1 for assistance. Proper procedures required the dispatcher to send police officers to Kelley's home, but in this case, the dispatcher was instructed by a supervisor to send officers only after T-Mobile "pinged" Kelley's cellphone and collected location information. *Id.* Officers were never sent to Kelley's home, and her body was found several days later. *Id.* The Court dismissed the claims against T-Mobile for lack of proximate cause, again noting that "the intervening factors in the case at bar arguably result in even more attenuated circumstances than were present in either *Sanchez* or *Cook*." *Id.* at *5.

Plaintiffs here allege that Defendants' failure to provide proper technologies prevented responders from providing timely aid, thereby causing Brandon Alex's death. (Am. Compl. ¶¶ 40, 45; Pl. Resp. at 10-11). Similar allegations were held not sufficient in *Sanchez, Cook,* and *Kelley* because the chain of causation was too attenuated in those cases. Each caller in *Sanchez, Cook,* and *Kelley* connected with the 9-1-1 call center, but emergency responders did not properly act on the emergency. Medical personnel never checked on Sanchez's apartment. Police officers did not treat Cook's 9-1-1 call as serious and left without entering her home. The police dispatcher was required by Dallas Police Department's internal guidelines to send officers to Kelley's home, but chose not to do so. Accordingly, the plaintiffs in each case could not show that "any of the intervening parties [i.e. the emergency responders] would have acted differently"

7

even if the 9-1-1 technology worked better or faster as plaintiffs allege it should have. *Cook*, 683 F. App'x at 321.

Here, Defendants' 9-1-1 technology simply did not work at all. Brandon Alex suffered a medical catastrophe unrelated to any wrongdoing. His babysitter was placed on hold for more than 40 minutes and never connected with any emergency responder. There is no chain of causation to analyze because there are no intervening factors. If Plaintiffs' allegations are proven, Defendants' defective 9-1-1 technology was a substantial—if not the only—factor that prevented Brandon Alex from receiving timely medical aid, and his death was a foreseeable consequence of the defect. Accordingly, Plaintiffs have adequately alleged proximate cause.

### 2. Gross Negligence, Recklessness, or Intentional Misconduct

Gross negligence consists of both objective and subjective elements. *See U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Plaintiffs must show that, objectively, "the act or omission involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others." *Id.* (citation omitted). Plaintiffs must also show that Defendants had "actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others."[5] *Id.*

The Amended Complaint describes how Defendants made a conscious decision not to adopt technology that would have caused the babysitter's 9-1-1 call to be connected. (Am. Compl. ¶¶ 26, 40, 44). It further describes how Defendants instead used outdated technology that led to more than three hundred emergency calls being placed on hold on a single day. (*Id.* ¶ 22). Prior to Brandon Alex's death, the Mayor of Dallas and various media outlets apparently

---

[5] Similarly, recklessness requires "proof that a party knew the relevant facts" creating the danger and "did not care about the result." *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006).

8

publicized that Defendants' technologies failed to actually connect callers to the 9-1-1 call center, resulting in many avoidable deaths. (*Id.* ¶¶ 22, 27). Plaintiffs thus allege that Defendants' failure to adopt new technologies or fix its existing 9-1-1 telecommunications system involved an extreme degree of risk, because the system simply did not work for many callers. Many could not connect to the 9-1-1 call center at all, as a result of which Dallas residents, including Brandon Alex, allegedly did not receive timely medical treatment that could have prevented their deaths. Plaintiffs further allege that Defendants knew of this risk, but failed to take any action. Accordingly, Plaintiffs have plausibly alleged gross negligence.

Because Plaintiffs have plausibly alleged proximate cause and gross negligence, the Court does not dismiss their claims on immunity grounds.[6]

### ii. Violation of the Texas Civil Wiretap Act

To state a claim for a violation of the CWA, a plaintiff must plausibly allege "(1) that defendants intercepted or attempted to intercept, (2) by using an electronic, mechanical, or other device, (3) the contents of [a communication] uttered by plaintiff, (4) without the consent of at least one party to the communication." *In re DirecTV, Inc., Cases*, 2004 WL 1490092, at *3 (N.D. Tex. July 1, 2004) (Kaplan, M.J.), *report and recommendation adopted sub nom. In re Directv, Inc., Cases*, 2004 WL 1773562 (N.D. Tex. Aug. 3, 2004) (Solis, J.); *see also* TEX. CIV. PRAC. & REM. CODE § 123.002(a)(1). Plaintiffs allege that Defendants T-Mobile US, Inc. and T-Mobile USA, Inc. intercepted or attempted to intercept Plaintiffs' "communication directed to a 9-1-1 public answering point" without consent. (Am. Compl ¶ 53).

---

[6] Defendants argue that Plaintiffs have failed to allege negligence and gross negligence claims for the same reasons that statutory immunity is applicable. Because Plaintiffs have plausibly alleged sufficient facts to overcome immunity, the Court will not dismiss Plaintiffs' negligence and gross negligence claims.

Plaintiffs have failed to plausibly allege the third element. There are no allegations that Detreasure Coker or Brandon Alex made any communications. At most, Brandon Alex's babysitter, who is not a plaintiff, attempted to communicate with the 9-1-1 emergency responders, but failed to do so. (Am. Compl. ¶ 12-13). Accordingly, Plaintiffs' CWA claim must be dismissed.

### iii. Products Liability

To state a claim for products liability, a plaintiff must plausibly allege that: (1) a product has a defect, rendering it unreasonably dangerous; (2) the product reached the consumer without substantial change in its condition from the time of original sale; and (3) the defective product was the producing cause of the injury to the user. *See Syrie v. Knoll Int'l,* 748 F.2d 304, 306 (5th Cir. 1984). Texas law recognizes three different types of defects: design, manufacturing, and marketing.[7] *See Romo v. Ford Motor Co.*, 798 F. Supp. 2d 798, 806 (S.D. Tex. 2011).

According to Defendants, "Plaintiffs do not allege that the wireless devices were defectively designed, that a defect resulted from a modification, or that there was a safer design alternative." (Def. Mot. at 15). Plaintiffs allege that the software[8] installed on mobile devices was defectively designed because the software made "accidental, duplicative or insufficiently identifiable calls to 9-1-1." (Am. Compl. ¶¶ 33-35). Plaintiffs attribute this defect to the software developed by Defendants or to Defendants' failure to guard against third parties tampering with the software. (*See, e.g.*, ¶ 44c). Plaintiffs then allege that this defect caused the

---

[7] The Amended Complaint does not explicitly refer to Plaintiffs' theory of product liability. (*See* Am. Compl. ¶ 56-69). Defendants argue that Plaintiffs' allegations are deficient under any theory. (Def. Br. at 14-15). Plaintiffs respond only that their allegations are sufficient to state a design defect claim. (Pl. Resp. at 23-24). The Court construes the pleading as alleging only one products liability claim—design defect.

[8] Although Plaintiffs use a generic term like "software," their allegations provide sufficient information to give notice of what is allegedly defective. Plaintiffs are not required, at this pre-discovery stage, to identify a product name. Additional specificity can be obtained through discovery.

9-1-1 telecommunications system to be congested, leading to calls based on real emergencies, like the babysitter's call, to be placed on hold. (Am. Compl. ¶¶ 33-35 57-59). The fact that a product that does not work as expected can support a design defect claim. *See Barragan v. Gen. Motors LLC*, 2016 WL 3519675, at *4 (W.D. Tex. June 22, 2016) (finding allegations that a "vehicle's restraint system was unable to restrain an occupant in [certain] situations" was sufficient to state a design defect claim). The lack of a feature—like protections against tampering—can also constitute a design defect. *See Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 239 (5th Cir. 2003). Accordingly, the Court concludes that Plaintiffs plausibly alleged a products liability claim.[9]

### iv. Violation of the Deceptive Trade Practices Act

The DTPA prohibits trade practices deemed to be false, misleading, or deceptive. *See* TEX. BUS. & COM. CODE § 17.50(a)(1)-(2). However, in order to recover under the DTPA, a plaintiff must establish that he or she is a "consumer" under the statute by showing (1) that he or she acquired goods or services by purchase or lease, and (2) that the goods or services purchased or leased form the basis of the complaint. *McClung v. Wal-Mart*, 866 F. Supp. 306, 308 (N.D. Tex. 1994); *see also* TEX. BUS. & COM. CODE § 17.45(4).

Plaintiffs allege that Brandon Alex was a "consumer" under the DTPA, but there are no allegations Brandon Alex purchased or leased any goods or services. Furthermore, even if Brandon Alex had been a consumer, any DTPA claim on behalf of his Estate must be dismissed because a DTPA claim does not survive the death of the consumer. *See Elmazouni v. Mylan,*

---

[9] Presumably, the safer, alternative design here is software that does not make accidental, duplicative, or insufficiently identifiable calls, and protects against tampering. Plaintiffs do not explicitly state this in their Amended Complaint. *See Rodriguez v. Gilead Scis., Inc.*, 2015 WL 236621, at *3 (S.D. Tex. Jan. 16, 2015) ("[A] safer alternative design is a necessary component to a design defect claim."). Plaintiffs are directed to specify the safer, alternative design in an amended pleading on or before March 12, 2018, to clarify that this is their only products liability claim.

11

*Inc.*, 220 F. Supp. 3d 736, 745 (N.D. Tex. 2016) (Lynn, C.J.) ("Although the Texas Supreme Court has not decided whether DTPA claims survive the death of the consumer, and there is no consensus on that issue among the intermediate state appellate courts, this Court has previously concluded that DTPA claims do not survive the death of the consumer."). Accordingly, Plaintiffs' DTPA claim must be dismissed.

### v. Derivative Claims

#### 1. Survival

Defendants argue that Plaintiffs do not have the capacity to bring a survival claim. Generally, only an Estate's personal representative has the capacity to bring a survival claim. *Nicholson v. XTO/EXXON Energy, Inc.*, 2015 WL 1005338, at *2 (N.D. Tex. Mar. 4, 2015) (Kinkeade, J.). Under certain circumstances, such as (1) if the heirs can prove there is no administration pending and none is necessary or (2) when a familial agreement vitiates the need for an administration of the estate, then the heirs may be entitled to sue on behalf of the decedent's estate. *Id.*

Detreasure Coker and Bridget Alex, Brandon's grandmother, had been engaged in a probate dispute over who is the Estate's proper administrator. *See In the Matter of the Estate of Brandon Alex, Deceased*, No. PR-17-01591-1 (Dallas Cty. Prob. Ct. May 3, 2017). The matter has been resolved and dismissed by settlement. Given this settlement agreement, Detreasure Coker has plausibly alleged her capacity as Brandon Alex's heir to recover under the survival statute.

#### 2. Wrongful Death

Defendants also argue that Plaintiffs do not have the capacity to bring a wrongful death claim. Only "the surviving spouse, children, and parents of the deceased" may bring a claim for

wrongful death. TEX. CIV. PRAC. & REM. CODE § 71.004(b). An estate therefore may not assert a wrongful death claim on its own behalf. Furthermore, all persons entitled to recover under the statute must be a party to the same suit or the pleading must aver that the action is brought for the benefit of all of those entitled to recover. *See id.*; *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 850 (Tex. App. 1997). Detreasure Coker does allege that the claim is brought for the benefit of all of those entitled to recover.[10] (Am. Compl. ¶ 72). Accordingly, the Court concludes that Detreasure Coker has plausibly alleged her capacity to recover under the wrongful death statute.

### III. Motion for Leave to Amend

#### a. Legal Standard

Rule 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P 15(a); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading."). Leave to amend should not be denied unless there is a substantial reason to do so. *See Jacobsen v. Osbourne*, 133 F.3d 315, 318 (5th Cir. 1998). Substantial reasons include "undue delay, bad faith, dilatory motive on the part of the movant, or undue prejudice to the non-movant." *Cover Four, L.L.C. v. Cardiac Sci. Corp.*, 2007 WL 4245486, at *1 (N.D. Tex. Dec. 3, 2007).

---

[10] The Court recognizes that Bridget Alex and Brandon Alex's father, Jashawn Alex, have a pending lawsuit before this Court, also alleging a wrongful death claim for Brandon Alex's death. *See Bridget Alex v. T-Mobile USA, Inc.*, No. 3:17-cv-1532-M (N.D. Tex., filed June 8, 2017). However, it is not necessary for this present suit to be brought "with the knowledge and consent of all the beneficiaries; it is enough that the suit appear to be brought for their benefit." *Martone v. Livingston*, 2015 WL 9259089, at *2 (S.D. Tex. Dec. 18, 2015). In any event, the Court intends to consolidate the cases, so any assertion that Bridget Alex and Jashawn Alex must participate in this suit in order for Detreasure Coker to recover under the wrongful death statute is moot.

### b. Analysis

There are no apparent substantial reasons to deny leave to amend, and the Court concludes that the motion should be granted. Nothing in the record suggests bad faith or a dilatory motive on Plaintiffs' part. Allowing Plaintiffs to amend would not materially prejudice Defendants because the case has been stayed, and the Court has not yet issued a scheduling order. Indeed, courts typically grant leave to amend "unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).

However, the Court makes two observations. First, Plaintiffs' proposed pleading does not address all of the defects identified in this Order. For example, Plaintiffs do not make any material changes to the allegations underlying their DTPA and CWA claims. Plaintiffs thus must further amend their pleading to plausibly allege those claims. Second, the proposed pleading includes claims against the City of Dallas. The Court denied joinder of the City, and all claims asserted against the City were dismissed without prejudice. (ECF No. 34).

## IV. Conclusion

For the reasons stated above, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**, and the Motion for Leave is **GRANTED**. Plaintiffs' DTPA and CWA claims are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs have leave to amend their pleading, addressing those defects identified in this Order that are curable, by March 12, 2018.

Because the Court's November 20, 2017, Order stayed the case pending the resolution of Defendants' Motion to Dismiss, (ECF No. 23), the stay is therefore **LIFTED**. The parties are directed to confer and submit a revised joint proposal for the contents of a scheduling order, by March 22, 2018.

**SO ORDERED**.

March 1, 2018.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**